UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL LOUKAS #158249,

        Plaintiff,                              Case No. 2:07-cv-142

v.                                                          Honorable Wendell A. Miles

GEORGE PRAMSTALLER, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

I.        Factual allegations

Plaintiff Michael Loukas, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Medical Director George Pramstaller, Dr. Fernando Frontera, Dr. Michael Engelsgjerd, Regional Medical Director H. Pandya, Risk Management Coordinator Nancy Martin, the Michigan Department of Corrections (MDOC), and Correctional Medical Services (CMS).

Plaintiff alleges in his complaint that he contracted the Hepatitis C virus in 1986. Since 1996, Plaintiff's liver enzyme levels (ALT) have been monitored by medical staff every six months in order to determine the condition of Plaintiff's liver. Plaintiff states that normal ALT levels are between 1 and 35, and that his levels have ranged from 40 to 60. Plaintiff states that the treatment for Hepatitis C is Interferon and that in order to receive this treatment, Defendant CMS has protocols that must be met by a prisoner's condition. Plaintiff claims that the protocols are constantly being changed by Defendant CMS in order to make it harder for prisoners to qualify for Interferon because the treatment is quite expensive.

Plaintiff asserts that he had a routine blood test in May of 2006, which showed that his ALT level was 86. Plaintiff had previously been informed that any ALT reading of over 56 required a follow-up blood test every two months to determine whether the ALT level dropped back below 56. Plaintiff understood that if a prisoner's ALT level did not drop below 56 after six months and three consecutive blood tests, he was to be treated with Interferon. Plaintiff asserts that Defendant Engelsgjerd never scheduled Plaintiff for any follow-up tests in deliberate indifference to Plaintiff's medical needs. Plaintiff filed a grievance requesting to see a doctor to obtain a follow-

up test, but was not seen until November 29, 2006, at which time the Physician's Assistant scheduled Plaintiff for a blood test.

On December 1, 2007, Plaintiff had a blood test which revealed that his ALT level was 72. Plaintiff states that he began to experience pain in his liver and kidney area in December of 2006, when his ALT levels escalated for a six month period. Plaintiff began to file grievances and complaints and to write letters to CMS officials, to no avail. At some point, Defendant Fontera examined Plaintiff and noted that Plaintiff was suffering from liver inflammation, which was causing pain in his kidneys. Defendant Fontera prescribed Tylenol for Plaintiff, despite the fact that Plaintiff's medical file indicates that he cannot take either Tylenol or Motrin due to side effects. Plaintiff filed grievances regarding the effective denial of pain medication. Plaintiff then wrote to Defendants Pramstaller and Pandya, requesting treatment with Interferon. Neither party responded to Plaintiff's letters. Plaintiff also sent a proposed "declaratory ruling" to the governor's office.

On February 5, 2007, while Plaintiff was confined at the Marquette Branch Prison (MBP), his "declaratory ruling" reached the governor's office. Plaintiff was initially placed in segregation and was told that he was under investigation. After seven days in segregation, Plaintiff went back to general population. After only three days in general population, Plaintiff's "declaratory ruling" arrived at the prison and Plaintiff was again placed in segregation. On February 21, 2007, Plaintiff was seen by Dr. Jenkins at MBP and was placed on Ultram, a pain medication. Two days later, Plaintiff was transferred back to LMF, where he was seen by Defendant Fontera. Defendant Fontera took Plaintiff off the Ultram and prescribed Tylenol, despite Plaintiff's protestations that he could not take Tylenol.

Plaintiff states that his sister, who is a nurse, wrote a letter to Defendant Martin, requesting that CMS treat Plaintiff. In the letter, Plaintiff's sister explained that doctors at Oakwood Hospital had informed her that patients with Plaintiff's ALT levels should be treated with Interferon. Defendant Martin responded by stating that Plaintiff had a right to seek outside medical treatment if the warden allowed it. However, Plaintiff states that he cannot afford to pay for outside treatment.

Plaintiff states that after his ALT level climbed above 70 for six months, Defendant CMS changed that standard for receiving Interferon to require an ALT of more than 100 for an entire year, as well as a liver biopsy indicating the existence of cirrhosis. If a prisoner does receive Interferon from CMS, he is tested after 12 weeks to determine whether his viral load has declined. If the viral load has not declined enough, the prisoner is taken off treatment and nothing else will be done to fight the virus. Plaintiff asserts that CMS's plan denies prisoners such as Plaintiff the Interferon treatment when it would do the most good, denying the majority of Hepatitis C sufferers effective treatment, but resulting in a savings of millions of dollars to CMS.

Plaintiff contends that the higher his ALT level is, the higher his chance of liver failure and other complications. Plaintiff alleges that his ALT levels have continued to escalate and that his pain continues to worsen. Plaintiff states that the minor treatment he has received, such as blood tests and x-rays, have not adequately addressed Plaintiff's declining condition and that Defendants' failure to provide him with Interferon constitutes deliberate indifference. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness

of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not

enough to state a deliberate indifference claim.  *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).  Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also*, *Brock v. Crall*, No. 00-5914, 2001 WL 468169, at *2 (6th Cir. Apr. 27, 2001); *Jones v. Martin*, No. 00-1522, 2001 WL 223859, at *1 (6th Cir. Feb. 28, 2001); *Williams v. Mattson*, No. 99-1796, 2000 WL 924145, at *1 (6th Cir. June 28, 2000); *Davis v. Ulep*, No. 97-2124, 1999 WL 98390, at *1 (6th Cir. Jan. 29, 1999); *Cain v. Huff*, No. 96-1613, 1997 WL 377029, at *4 (6th Cir. July 2, 1997); *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In this case, Plaintiff alleges that he suffers from an objectively serious medical condition - Hepatitis C.  Plaintiff claims that he is being denied adequate treatment because he is not being treated with Interferon.  Plaintiff attaches responses to various grievances and complaints to his complaint.  According to these responses, Plaintiff is receiving medical care in accordance with the chronic care clinic guidelines for Hepatitis C and has received educational counseling and monitoring.  In addition, periodic testing is being conducted in order to determine the status of

Plaintiff's Hepatitis C.  (*See* step I response to MBP-06-12-2126-12D1.)  According to the step II response to MBP-06-12-2126-12D1, a health record review showed that Plaintiff's ALT levels were tested on February 13, 2006, May 19, 2006, and December 4, 2006, and that Plaintiff was seen in the chronic care clinic on November 2, 2006, at which time Plaintiff did not complain of pain in his left side or other problems.  In addition, the response noted that Plaintiff will continue to be followed in the chronic care clinic as needed and that the facility medical service provider will determine when referral for a liver biopsy and/or additional treatment is indicated.

In the step I response to LMF-07-04-147312D3, the respondent noted that Plaintiff was complaining of an intolerance to Tylenol and Motrin, but that no documented allergies were found in Plaintiff's medical file.  The respondent further noted that Plaintiff had taken Tylenol and Motrin in the past and that the Physician was qualified to determine the amount and type of medication to prescribe.  The step II and III responses support this conclusion.  Based on a review of the complaint and the documents attached as exhibits, the undersigned concludes that the dispute in this case is over the adequacy of the treatment received.  As noted above, such claims sound in tort law and do not rise to the level of an Eighth Amendment violation.

## Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

     /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 5, 2007

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).