UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL LOUKAS,

    Plaintiff,

                                                      Case No. 2:07-cv-142

v

                                                      Hon. Wendell A. Miles

MICHIGAN DEPARTMENT OF CORRECTIONS,
*et al.*,

    Defendants.

_____/

ORDER ON MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
AND ORDER OF DISMISSAL

      The plaintiff in this action is a state prisoner currently confined by defendant the Michigan Department of Corrections ("MDOC") at Michigan's Alger Maximum Correctional Facility. His complaint asserts civil rights claims against a number of defendants under 42 U.S.C. § 1983. In a nutshell, plaintiff alleges that the defendants are violating his rights under the Eighth Amendment by exhibiting deliberate indifference to his need for medical treatment for the hepatitis C virus by denying him treatment with the drug Interferon.

      On October 5, 2007, United States Magistrate Judge Timothy P. Greeley issued a Report and Recommendation ("R & R") recommending that the complaint be dismissed for failure to state a claim. Plaintiff has filed objections to the R & R (doc. no. 9). The court, having reviewed the R & R, and having considered *de novo* those portions to which specific objection has been made, agrees with the recommendation to dismiss the complaint for failure to state a claim.

**Discussion**

The Magistrate Judge concluded that plaintiff has stated no claim under the Eighth Amendment based on deliberate indifference to serious medical needs because he has not been denied medical treatment but rather merely disputes the adequacy of the treatment provided. In his objections, plaintiff argues that he has stated a claim because (1) the defendants have certain "medical protocols" which they are "mandated" to follow, and (2) he has submitted evidence, in the form of laboratory test results, indicating that he falls within the mandated protocols. Under the circumstances, plaintiff argues, he has pled a claim under the Eighth Amendment pursuant to Erickson v. Pardus, 127 S.Ct. 2197 (2007). Pursuant to Fed.R.Civ.P. 72(b), the court is required to make a de novo review upon the record of those portions of the Magistrate Judge's disposition to which specific written objection has been made.

In Erickson, the Supreme Court concluded that a prisoner had properly pleaded an Eighth Amendment claim, where he alleged that prison officials had endangered his life by removing him from hepatitis C medication shortly after he began a year-long treatment regimen, and that he was suffering from continued damage to his liver as a result of the nontreatment. Id. at 2199-2200. The Court reaffirmed that Fed.R.Civ.P. 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 2200 (internal quotation marks omitted). However, the Court also observed that "whether [the plaintiff's] complaint is sufficient in all respects is a matter yet to be determined[,]" based on "the proper application of the controlling legal principles to the facts[.]" Id. The Court concluded by holding that the case could not be dismissed "on the ground that [the plaintiff's] allegations of harm were too

conclusory to put these matters in issue." Id.[1]

Here, in contrast, the Magistrate Judge did not determine that plaintiff's allegations were too conclusory to allege a cognizable claim for relief. Instead, it appears to the contrary: plaintiff's allegations go well beyond mere notice pleading, and are highly specific. Plaintiff has expressly alleged that since he was found to have the hepatitis C virus in 1996, he "has been monitored by Medical Staff with routine blood test [sic] every six months to determine his liver enzyme levels (ALT)." Complaint at 3, ¶ 17.[2] Plaintiff further states that defendant Correctional Medical Services ("CMS"), which contracts to provide health care for defendant MDOC, has established criteria which a prisoner must meet in order to be considered for treatment with Interferon (although plaintiff challenges the treatment protocols, which he alleges are continually changed to make it more difficult for prisoners to meet the criteria for the costly treatment). Id., ¶ 18. Plaintiff further alleges that he was at one point told that an ALT reading of over 56 in three consecutive blood tests performed every two months over a six-month period required treatment with Interferon according to CMS protocols. Id., ¶ 19. Plaintiff additionally alleges that because his ALT levels were found to be 86 and 72 in May, 2006 and December, 2006 respectively (he was not tested in between those dates), he should be deemed a proper candidate

---

[1] Erickson is consistent with Estelle v. Gamble, in which the Court recognized that deliberate indifference to a prisoner's serious medical need could be manifested by prison doctors intentionally interfering with prescribed treatment. 429 U.S. 97, 104-105 (1976).

[2] "ALT" refers to alanine aminotransferase, also known as alanine transaminase or serum glutamic-pyruvic transaminase ("SGPT"). ALT is an enzyme produced inside liver cells. The enzyme is frequently elevated in people with chronic hepatitis C infection because of a breakdown of the membranes of liver cells due to inflammation, although levels may also be elevated due to other conditions including mononucleosis, alcoholism, liver damage, kidney infection, chemical pollutants, or myocardial infarction. ALT levels are measured using a common blood test.

for treatment according to CMS protocols. Id., ¶s 19-21.[3] Attachments to plaintiff's complaint indicate that he was tested on the following dates: May 19, 2006; December 4, 2006; January 18, 2007; and April 11, 2007. His ALT results were as follows, respectively: 86; 72; 72; and 81. Complaint, Exhibit 2. Each test result also specifies an "expected range" for the ALT (also known as "SGPT") of "7-56," presumably meaning the normally expected range is between 7 and 56. Plaintiff's results for another liver enzyme tested, AST, were consistently within the expected range for each of the same four tests.[4]

With his objections, plaintiff has also provided a copy of what he contends are the treatment protocols which mandate the treatment he is seeking. (It is noted that pages of this exhibit appear to be missing, insofar as the pages are not in sequential order.) These protocols, however, expressly provide merely that "[t]hose prisoners whose liver enzymes (ALT, AST) are elevated on an average of two times the upper limit of normal over the preceding 6 months will be offered further evaluation[,]" including additional tests. Michigan Department of Corrections Bureau of Health Care Services, Hepatitis C (HCV) Clinical Management Program at 3, ¶ 5. Afterward, the prisoner may be referred for an infectious disease consult. Id., ¶7. The guidelines further expressly provide as follows:

> Those prisoners whose average liver enzyme values are elevated above the high limit of normal, but do not reach 2 times the upper limit of normal will continue

---

[3] Although plaintiff states that he had a blood test on December 1, 200*7*, Complaint at 3, ¶ 21, this appears to be a mistake. Plaintiff filed his complaint on July 17, 2007, and he could not possibly allege that he was tested on a date which had not yet even arrived.

[4] "AST" refers to aspartate aminotransferase. Like ALT, AST is an enzyme which is used as a diagnostic aid in viral hepatitis and other conditions.

4

>  to be monitored with Chemistry Panels and Chronic Care visits at a frequency determined by the primary care provider, but no less frequently than every 6 months.

Id., ¶ 7.  Prisoners may receive antiviral therapy only according to the directions of an infectious disease specialist.  Id. at 5, ¶ E.1.  The antiviral therapy appears to consist of Interferon or Ribavirin or a combination of the two.  See id. at 5.

Although plaintiff concedes that he questions the treatment protocols, plaintiff insists that he nonetheless falls within the criteria for antiviral treatment for hepatitis C.  However, plaintiff's own exhibits contradict his allegations that he qualifies for treatment according to the protocols.  Specifically, plaintiff's exhibits show that his liver enzymes – ALT and AST – have not been elevated an average of two times the upper limit of normal over a six month period.  Plaintiff's ALT levels have not been elevated an average of two times the upper limit of normal, and his AST levels have remained within normal limits.  Moreover, even if his liver enzymes had been sufficiently elevated, this would only qualify plaintiff for further evaluation by a specialist; it would not necessarily qualify him for antiviral therapy, according to the protocols.

This case does not present a situation like that in Erickson, in which the plaintiff was deemed qualified for treatment and then removed from it.  Instead, according to plaintiff's own exhibits he does not qualify for the specific treatment he demands.  "The question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."  Estelle v. Gamble, 429 U.S. 97, 107 (1976).  "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice, and as such the proper forum is the state court."  Id.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (6th Cir.1976). Here, according to his own allegations plaintiff's long-term condition has been continuously monitored. He has received medical attention and merely disputes the adequacy of the treatment. Therefore, plaintiff's situation is like that of the plaintiff in Hix v. Tennessee Department of Corrections, No. 05-5814, 2006 WL 2431103 (6th Cir. Aug. 22, 2006), which affirmed the dismissal of a similar complaint by a prisoner who alleged that doctors had not prescribed the proper treatment for his hepatitis C. As the panel recognized in that case and "numerous courts have acknowledged, hepatitis C does not require treatment in all cases." Id. at *6 n.1.

By attempting to allege a case for malpractice in the context of a civil rights complaint, plaintiff has effectively pled himself out of a cause of action. Because his allegations simply constitute a difference of opinion between himself and medical personnel regarding his medical condition, he has failed to allege facts that, if proven, would rise to the level of deliberate indifference in order to support an Eighth Amendment claim. See id. at *6 (where complaint alleged only that doctors prescribed treatment for symptoms rather than treatment prisoner requested, allegations "established nothing more than a mere difference of opinion with the doctors' diagnoses and prescribed treatment" and failed to state a claim for deliberate indifference to prisoner's serious medical needs). The Magistrate Judge was correct in

concluding that plaintiff has failed to state a claim for relief.[5]

Plaintiff has also complained that he is in pain and is not receiving adequate treatment for this symptom. In this regard, he objects to the Magistrate Judge's observation that "Plaintiff was seen in the chronic care clinic on November 2, 2006, at which time Plaintiff did not complain of pain in his left side or other problems." R & R at 8. Plaintiff argues that he must have complained of pain on that day because he was prescribed pain medication at that time.

According to the specific allegations of his complaint, plaintiff "began to experience pain in his liver and kidney area in December 2006, when his (ALT) levels escalated for a six month period." Complaint at 4, ¶ 22. However, plaintiff has also alleged that he was seen by a physician assistant ("P.A.") on November 29, 2006. Id., ¶ 20. Although the P.A. scheduled plaintiff for a blood test, plaintiff does not allege that he complained of pain at that time, and there is nothing in plaintiff's exhibits documenting such a complaint. Therefore, according to plaintiff's own allegations, he did not complain of pain until December, 2006.[6]

What is truly odd about plaintiff's decision to object to the Magistrate Judge's observation that plaintiff did not complain of pain in November, 2006 is that plaintiff himself

---

[5]Plaintiff relies on McKenna v. Wright, 386 F.3d 432 (2d Cir. 2004), which dismissed for lack of jurisdiction an appeal of a district court decision denying dismissal based on qualified immunity. The plaintiff in that case was a New York state prisoner who was denied treatment for hepatitis C initially because he was scheduled for a parole board appearance and then because he was not enrolled in an alcohol and substance abuse treatment program. The prisoner's condition progressed to cirrhosis of the liver, accompanied by various complications such as jaundice, ascites, and hemorrhaging. Only afterward was he approved for treatment, but by that point his disease was too advanced and he was too weak to endure the side effects. That case is therefore distinguishable, insofar as it contains no indication that the prisoner did not meet the medical criteria for treatment.

[6]In his objections, plaintiff refers to an "attached Grievance as Exh. 3" as support for his newly asserted contention that he complained of pain as early as November 2, 2006. However, none of the exhibits attached to plaintiff's objections refer to the date of November 2, 2006.

alleges that he was given pain medication at that time – although the medication he was given was clearly not his medication of choice. Moreover, plaintiff's own allegations and exhibits indicate that he has repeatedly been prescribed pain medication and that with one exception, plaintiff has either insisted that the medication doesn't work or complained about side effects. However, the matter of which pain medication, if any, to prescribe – like the matter of whether plaintiff is a proper candidate for antiviral therapy – is a matter of medical judgment for plaintiff's doctors, not a matter of personal choice for plaintiff. Under the circumstances, plaintiff's objection that the Magistrate Judge failed to acknowledge his allegations of pain is meritless, as is his claim that the defendants have violated the Eighth Amendment by offering him pain medication which he has chosen not to take.

Finally, it is noted that even if plaintiff had stated a claim against any of the defendants which was sufficient to survive dismissal, his claim against the MDOC would be subject to dismissal in any event. A state is not a person within the meaning of § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989). The MDOC is an arm of the State of Michigan, and therefore not subject to suit under § 1983. See Hilton v. South Carolina Public Railways Comm'n, 502 U.S. 197, 200-201 (1991) (in Will, "[w]e held that a State is not a 'person' as that term is used in § 1983, and is not suable under the statute, regardless of the forum where the suit is maintained"); Hix, 2006 WL 2431103, at *4 (Tennessee Department of Corrections, an administrative department of the state of Tennessee, was not a proper defendant under § 1983); see also M.C.L. § 16.104(11) (identifying the Department of Corrections as a "principal department" of the state of Michigan). Therefore, plaintiff's attempted claim against the MDOC must be dismissed.

## **Conclusion**

IT IS HEREBY ORDERED that the R & R of the Magistrate Judge is approved and adopted as the decision of the court.  The complaint is dismissed with prejudice.

For the reasons stated both above and by the Magistrate Judge in the R & R, the court finds no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).

So ordered this 27th day of February, 2008.

 /s/ Wendell A. Miles
Wendell A. Miles, Senior Judge